Our first argued case is Downey versus Snohomish County Sheriff's Office. Council may begin whenever you're ready. Good morning and may it please the court. My name is Virginia McAlmont and I represent Dylan Downey. I intend to reserve three minutes of my time for rebuttal. Mr. Downey is a disabled man who, for a period of months in 2017, was housed as a pretrial detainee in the Snohomish County Jail. While he was there, Mr. Downey repeatedly asked for and was denied accommodations for his disabilities, despite the fact that such accommodations were available. Worse yet, when Mr. Downey reported that he was being denied accommodations, he was retaliated against. What Mr. Downey experienced at the Snohomish County Jail gave rise to a number of different claims against a number of different defendants, which Mr. Downey pursued pro se before the district court. Council, let me just shortcut things and ask you the following. I want you to assume for the purpose of this question that we do not see evidence of deliberate indifference for a Section 1983 claim. Does that affect in any way the ADA claim? I don't believe so, Your Honor. I recognize that the standard uses similar language, but I think that they are different standards. And so for purposes of the ADA claim and the RA claim, which is part of this case and should be analyzed alongside it, I believe the standard is met with the evidence that Mr. Downey proffered related to the notice that the defendants had of his condition. And the fact that they continued even after being on notice of what he needed to move him to cells that did not accommodate his disability. What if any is the mental state required for a successful ADA claim? I don't believe that there's a mental state requirement, Your Honor. I believe that the requirement is that there be some evidence of deliberateness. So I don't think that necessarily means that Mr. Downey has a burden of showing that particular defendants were intending for purposes of, say, the ADA retaliation claim to retaliate against him. I think that the court can infer from the totality of the circumstances related to Mr. Downey's treatment that this cannot have been inadvertent or negligent. I think it has to be what Mr. Downey has to show is something more than just negligence. But again, I think that's amply demonstrated in this case. So what I'd like to focus on today are... One more question about that. And is it your understanding that there is a supervisory liability under the ADA, which there is not under Section 1983? It is my understanding based on this court's prior holding in Duval that there is vicarious liability on behalf of the county for actions of employees. So I think that's different from supervisory liability. We noted in our opening brief that for that reason, we're pursuing the ADA claims against Snohomish County itself as opposed to against the individual defendants. But again, I think in that particular instance under Duval, the county is liable for the actions of its defendants on a theory of vicarious liability. I have a question, if I might, please. Is your client, when he asks for all of these helping things out with his disability, keeping in mind that he had a long history of being a disruptor over there, and a lot of these occur where he was in disciplinary actions. Is he entitled to everything that he asks for, or can they make some sort of an accommodation under the circumstances that relate to his actions? Sure, Your Honor. So I might quibble with describing him as a disruptor. He admitted that, counsel. He admitted that. He said, I'm a management problem. Okay, fair enough, Your Honor. So I think, yes, there are different kinds of accommodations that could have been provided to Mr. Downey to accommodate his disabilities. Mr. Downey lists a number of them in his declarations that he submitted in support of his opposition to the motion for summary judgment. I also want to note his complaint, 26 pages, single-spaced, is a verified complaint, and it's quite detailed. And he talks about the things that would be required. The defendants haven't given any evidence that they couldn't both deal with whatever they wanted to as far as having sanctions for Mr. Downey, putting him in lockdown, not allowing him out with other people, that they couldn't do that in a way that also accommodated his disability by housing him in cells that had the facilities that he needed. And I think a particularly good example of that comes from the incident on May 2nd, where he is first transferred to the old jail. He's then sent back to the new jail. And when he comes back to the new jail, he's initially put in a cell that is ADA-compliant. And then within 30 minutes, he's moved to a non-ADA-compliant cell where he serves a four-day sanction, can't take a shower, and then after that is moved back to an ADA-compliant cell when his sanction is done. So I think that demonstrates that there wasn't a need for him to be repeatedly sent to the old jail to serve sanctions for things like contacting female inmates or allegedly making pruno or not taking medications. So absolutely, the jail has some interest in making sure that they can enforce order, but not to the extent of depriving Mr. Downey of his rights under the ADA and the Constitution. If there aren't further questions, the thing that I really wanted to highlight is what I started to say in my last answer, which is that there's potentially a lot of complexity here with the claims and different legal issues. But at base, we think this is a very simple appeal. And the reason it's simple is because the district court erred in two different ways when it decided that the defendants were entitled to summary judgment. One is it said on multiple occasions that there was not actual evidence to support Mr. Downey's claims. But that, of course, overlooks the voluminous evidence about what Mr. Downey himself would testify to if he were permitted to go to trial in this case. Again, that was submitted in the form of declarations. It was submitted in the form of a very detailed verified complaint. This court has previously held that a verified complaint can be treated like an affidavit for purposes of a summary judgment opposition. And again, Mr. Downey could testify to many of the things that he set forth in those documents. Well, could I ask you a question about that? There is a dispute whether some of these people are actually on duty down there. And do you have an opinion where the official records show that one of the people that he wants to bring charges against or suits against, he wasn't even in that pod for the entire week. Yet he says he was there during one of those hearings. How do you reconcile that? Because that's pretty telling information. Sure. I apologize, Your Honor. Oh, go ahead, please. Yeah, I appreciate you raising that. So this is one where I think careful parsing of the record means that two things can be true at once. So Mr. Downey's verified complaint said that he had this conversation on or about March 11th. And the defendant sees on March 11th, and that's the basis for the declaration saying, I wasn't working on March 11th. I couldn't possibly have been there having this conversation. If you look at the time cards that are submitted with one of the declarations, it's possible that that conversation happened on March 10th. And Mr. Downey himself says in some of his declarations, I could be wrong by a day. It could have been March 10th. And defendants don't actually say this conversation never happened at all. He never demonstrated to us that he couldn't get into the shower. They say we didn't have that conversation on March 11th and couldn't have. And so that's a good example of a place where I think the record evidence submitted by the defendants actually support Mr. Downey and what he's saying about the substance of the conversation, even if he was wrong by a day, which, again, using the words on or about and admitted later that he could have been. That one I'm not in trouble with. It was the other person. But assuming, though, that he also says in his amended complaint that he told him, I need these things around March 11th. And he says, and Mr. I guess one of the two that he names leaves, goes back, comes back and said, I checked it out, and they cannot make these and will not make these accommodations. So and this is a detention officer who has no authority to make a change. It has to be done somewhere else. There's no indication that they didn't bring it to someone's attention. Yet there's other records to show that it was never happened. But that's maybe a question of fact. But that's the thing I'm having a little trouble with. Sure, Your Honor. I do think that identifying that as a question of fact is exactly right and exactly what the issue is here. These things are all fact questions that Mr. Downey should be permitted to try to a jury of his peers as opposed to having resolved on summary judgment. And what was your what was your second point? You're almost out of time. You never got to the second thing that you thought the district court did wrong. Thank you, Your Honor. That's drawing inferences in favor of the defendants instead of Mr. Downey. So I think a good example of that is the move card footnote that's in the district court order saying that there's no evidence about when the notations that Mr. Downey was needed an ADA cell in a wheelchair when that was added to the move card. There's also no evidence that that was added at any point later either. And so I think the inference that should be drawn is that that's information that was on the move card and was known to defendants well before Mr. Downey was deprived of the accommodations that he asked for any of the times that he asked for them. I understand I only have 11 seconds, but I will reserve the remainder of my time for rebuttal. We asked a lot of questions. You may have a minute for rebuttal when the time comes. And you're now for Ms. Duncan. Good morning and may it please the court. My name is Margaret Duncan on behalf of Snohomish County and the 15 individuals named in this lawsuit. We request that you affirm the court's grant of summary judgment in favor of the county and the individuals and also find that the court did not abuse its discretion when it denied Mr. Downey's requests for counsel. A close review of the record in the light most favorable to Mr. Downey reveals there was confusion and at times miscommunication among jail staff on where Mr. Downey should be housed based on his classification status, his repeated violations of jail rules, his disability, and later on his concerns for his safety. Confusion or miscommunication do not, however, equate to deliberate indifference, which Mr. Downey bears the burden of proving for the majority of his claims, including the ADA discrimination and the 1983 conditions of confinement and failure to protect claims. His ADA and retaliation claims likewise fail because any actions taken by jail personnel were to advance legitimate correctional goals, which include maintaining discipline and order in the jail and ensuring the safety of the jail's inmates and staff. Courts have repeatedly recognized that running a jail is an extremely difficult task. Although the court must draw all reasonable inferences. Counsel, what do you make of the example that opposing counsel gave of a situation in which initially the plaintiff was housed in an ADA compliance cell, even though on lockdown, but then moved to a noncompliant cell. So clearly they were available. And if available and if lockdown could be accomplished in such a cell, isn't that a required accommodation? No, it's not a required accommodation for two reasons. In my example, it's available and lockdown is an available sanction in that location. And using that as the example. Continue, please. Yes, yes, Your Honor. So he was moved to the other cell after he had expressed concerns for his safety. And Mr. Downey admits that the cell he was moved to within that unit, although not ADA compliant, actually had two had double doors, which helped ensure his safety after he raised those concerns. There's also nothing in the record where Mr. Downey says that he he is prevented from obtaining any services by being in a non ADA compliant. Well, sure. He's saying he can't take a shower. That's the that's the main thing here. And, you know, with at least one of the incidents, I think it was the March 7th incident, although my memory of dates may also be incorrect. He attempted to get placed in a cell with such a shower and he tried and and failed to do that. So the service involved or the maybe service is the wrong word, but the nature of the cell is one with an ADA compliant shower. I think I'm trying to distinguish between the cell itself and then the shower. So he could be in a non ADA cell, but potentially still have access to an ADA compliant shower. Was that offered to him? The record does not show that that was an option that was offered to him. I mean, I don't at least I would say I don't recall seeing that, that that is part of the record. And if it is, tell me what I missed and where to find it in the record. So when he was housed in the new jail, which those are the F1 and the F4 modules. And this was at the time of the May 2nd stay that you were referring to. Those units do have access to ADA showers. It is the old jail, which in the record, you'll see that as four in D or four S.A. Those did not have access to ADA compliant showers. Well, now that you bring up the new and the old, as I understand it, the cells that were used when when prisoners were being disciplined were in the old jail. Is that right? And those were not they did not have ADA compliant showers. Yes. And just to explain that a little further, there are two four S.A. The shower there doesn't have a lip to so you could roll a wheelchair into the shower. And then the one in four indeed did have the lip. Does that help answer your question? Well, I'm trying to understand if if there was one that had had a lip that he could use, why was he denied it in the old jail? Well, I thought you I thought that the reason that he was in that he was that he didn't have an ADA compliant shower was because he was being disciplined and they took him out of the main population in the new jail. Is that right? Well, there were times where he was sent to the old jail. But once he expressed a concern about not being able to access an ADA compliant shower, then he was accommodated. And so he was provided an opportunity to access ADA showers after he complained and they resolved the issue. Could you help me out on something about how your procedure worked? It's a little unclear. I've looked at the records. But if someone like Mr. Downey says, I want an ADA shower, and they tell a detention officer who has no authority to reclassify or move people, how is that logged in if it's made if the detention office is his obligation to tell the classifiers? Or how does he convey that information as opposed to just brushing it off? How is that done in your system? Well, he would go and inform his supervisor or classification. And if you're speaking in regards to the March 7th incident, it's not clear in the record who the deputies went and inquired with. But what's important is that they did inquire and they came back and they did attempt to accommodate him by providing him a chair for that shower to use. I also wanted to bring up the ADA claims against the individuals and point out that Mr. Downey cannot maintain a cause of action under the ADA against them in their individual capacities. Rather, he can only maintain an action under the ADA against the entity. So the court should affirm dismissal of all ADA claims against those individual defendants. And with respect to Mr. Downey's ADA discrimination claim against the county, he has not put forth evidence suggesting deliberate indifference. And a close look at the cases... Excuse me, is deliberate indifference for constitutional purposes, it seems quite different than what is deliberate within the meaning of the statute. Doesn't deliberate in the statute simply mean intentional, unconscious, and knowing? You know, I didn't just make a mistake or think that Mr. X was actually Mr. Y or something like that. It doesn't mean, does it the same sort of, you know, the same mens rea as deliberate indifference for constitutional purposes? I do think it's slightly different under the ADA than for under the 1983 claims. Under the ADA, there has to be knowledge. It has to be more than negligence, which is also the same under the 1983 claims. But it requires both knowledge that a harm to a federally protected right is substantially likely, and then there has to be a failure to act upon that likelihood. Well, but taking in the light most favorable to the plaintiff, there is evidence of that, including the deal with it or take a birdbath comment, which the court, the district court ignored because of this date question of whether it was March 11th or on or about March 11th. So why isn't that enough to get past summary judgment? Well, even for purposes of summary judgment, even if we assume that was true, I would submit that that still does not rise to the level of deliberate indifference because the deputies did inquire as to how to best accommodate him, and he was provided a chair for use in the shower. And he objected to that, too, as I recall. He did not like that. On the record, that is in the record, Your Honor. However, the investigation does not need to be perfect. It has to be more than negligence to satisfy deliberate indifference. If there are no further questions, I would request that the court affirm summary judgment in favor of the defendants and find that the court did not abuse its discretion when it denied Mr. Downey's request for appointment of counsel. Thank you. You may have a minute for rebuttal. Thank you, Your Honor. I'd like to address two factual issues and then make an observation. So first, I believe counsel said that the reason that Mr. Downey was moved from the ADA compliant cell in the new jail to the non-ADA compliant cell was because of the doors and safety issues. In the record, Mr. Downey also declares that the second door was never closed, so there was no functional difference between the safety provided in the non-ADA compliant jail cell and the ADA compliant jail cell, even in the new facility. So I wanted to note that. And then as far as evidence of whether Mr. Downey was provided with access to a shower, there is also evidence in the record that Mr. Downey wasn't, even when he was in the new jail and even after the bird bath incident. I direct the court to Volume 5 of the excerpts of record, page 843, which is Mr. Downey's verified complaint, in which he says that he didn't get a shower for the four-day sanction. And my observation is just that these kinds of fact issues that we have been talking about are why this case should be reversed and remanded for trial. Thank you. Thank you, counsel. We appreciate the arguments from both of you. They've been very helpful, and the case just argued is submitted. And we thank you for participating as pro bono. Yes, thank you. I appreciate that. We all do. Thank you.
judges: SCHROEDER, GRABER, McNamee